LOTTINGER, Judge.
This is a tort action before'us on an appeal taken by the plaintiff from a judgment of the Lower Court which dismissed her suit. The action is one for damages sustained when plaintiff alighted from the automobile in which she had been riding after it had become stuck and slipped in the mud fracturing her left hip. Joined as defendants were W. H. Patterson and Company, Inc., a corporation which had contracted with the State of Louisiana to impro've the highway in the area, and its liability insurer, together with H. L. Allen & Sons, and their liability insurer, who had entered into a sub-contract with Patterson.
The trial judge favored us with written reasons for judgment which read in part as follows :
“On November 14, 1958, W. H. Patterson Co., Inc. was the general contractor engaged in the widening and improving of the Baton Rouge-Hammond Highway, and particularly that portion in the vicinity of the intersection of Harvey Drive with the highway, this being approximately one and one-half miles east of the traffic circle which is located on the eastern edge of Baton Rouge. Harvey drive enters the highway from the north, but does not cross it. At the date in question it was what is commonly known as a blacktopped street. The improvements being made included the construction of a service road paralleling the highway along the north side. This service road was 20 feet wide and 32 feet north of the highway, the 32 foot strip between the highway and the service road being referred to as the connection. Between the service road and what was to become Plarvey Drive proper was another strip 35 feet wide referred to as the turnout, that is, as entrance from the service road in *811 to Harvey Drive either from the east or the west, and likewise an exit from Harvey Drive on to the service road either to the east or the west.
“It is not disputed that on the date in question the paved surface of Harvey Drive had been removed from that portion in the 35 foot turnout strip and that portion in the 20 foot service road strip. There is a conflict in the testimony as to whether or not it had been removed from that portion in the 32 foot connection strip. While I do not think the matter is of any particular importance, it is my opinion, based on the testimony of Charles O. Bezard, project engineer for the highway department, that on the date in question the paved surface of Harvey Drive leading north from the highway for a distance of approximately 20 feet remained in place. From the level of the service road to the highway a distance of 32 feet, there was an incline of approximately one and eight-tenths feet.
“Thus it was that between the highway and the undisturbed portion of Harvey Drive there was an unpaved area either 67 feet or 87 feet in width. There is considerable testimony in the record as to the nature and condition of this area on November 14, 1958, the date of the accident involved in this suit. The evidence shows that on the day prior to the accident lime had been cut into the service road bed and the road bed had been rolled. W. G. Butler, Patterson’s superintendent, testified that gravel had been spread on the area, but his testimony on this point was vague and indefinite otherwise.
“The evidence shows that rain fell on this area a few hours prior to the accident. How much is not shown but the amount is not important. It is beyond question that the area was muddy and slick at the time of the accident, and this was true of any portion of the paved surface of Harvey Drive remaining in place immediately north of the highway. This muddy,, unpaved area had ruts in it, as will any such area being traversed by motor vehicles. There is no evidence of holes in the area, at least none connected with the accident here sued on.
“Plaintiff, a lady 65 years of ager and her daughter resided on Harvey Drive a short distance north of.the highway. They left their home about 7:00 or 7:30 in the evening of November 14, 1958, to go to one of the business houses a short distance east on the highway, traveling in the daughter’s car with the daughter driving. They could have reached the business place by another though longer route. The daughter had driven across the areas, in question that morning in going to her place of employment in downtown Baton Rouge, and again earlier in the: evening in returning home from her work. She negotiated it for the third time that day without difficulty. However, on returning home from the place of business they had visited, and shortly after leaving the highway, her forward progress was halted. As she expressed it, she got stuck. But the evidence does not indicate the car was stuck in the sense that drivers of the vintage of the writer so well remember that experience. That is, the car was not mired in the mud past movement forward or backward. It was rather that the wheels began to slide and spin to the extent that wheni she brought the car to a complete stop it was headed west instead of north.
“Plaintiff testified that after being stopped for about five minutes she stated she was going in search of assistance, which her daughter advised against. However, she got out of the car. She testified that she almost slipped down; that soft mud came up over her shoes; that she didn’t know it was that bad or she wouldn’t have *812 gotten out of the car. She removed her shoes, and started walking toward the nearest residence, which is located on the east side of the Harvey Drive immediately north of the highway right of way. There were no lights in the vicinity except Miss Manno’s car lights, and they were shining toward the west. Plaintiff was evidently .walking in a direction slightly east of north. After walking, according to her testimony, ‘a pretty good distance from the car’, she slipped and fell, fracturing her left hip.
* * * * * *
“There is no evidence whatever as to any liability on the part of the subcontractors, and plaintiff’s suit will be dismissed as to them and their insurer.
“Considerable evidence was offered as to Patterson’s duties and responsibilities under his contract with the Department of Plighways, together 'with evidence purporting to show his failure to discharge such duties and responsibilities, particularly with reference to the placing of flares, barricades and warning signs at the intersection involved in this suit. It is not contended that any of these safety measures were being taken by the contractor on the date of the accident. It is clear that the condition of the intersection was a source of great annoyance and inconvenience to the residents of that area, and had been for some time prior to the accident. However, conceding for the purposes of this opinion that the contractor was negligent in failing to maintain flares, barricades and warning signs at the intersection, there is no evidence that such negligence had any causal connection with the accident here involved. Miss Manno was thoroughly familiar with the intersection and its condition. She had traversed it on three prior occasions on the day of the accident, one of these occasions being shortly before the accident, going up the incline to the highway rather than down it as she did on her return.
“In my opinion the authorities cited by plaintiff are not applicable here. This is not a case involving injuries resulting from an automobile accident caused by an improperly maintained road, nor is it a case involving injuries resulting from an improperly maintained sidewalk or pedestrian cross walk. The question here, -as I view it, boils down to this: Was it the duty of the contractor to maintain this freshly graded, unsurfaced intersection in such a manner that it would not be muddy and slick following a rain, and that it would be safe for pedestrians to walk across any portion of it at any time, day or night? This court thinks not.
“Moreover, plaintiff, according to her own testimony, was aware of the condition of the road. Despite the protest of her daughter, she got out of the car; and despite her discovery of the muddy, slippery condition of the area, she proceeded across it in the dark. In similar cases our higher courts have denied recovery, holding that plaintiff’s negligence was the proximate cause of the accident. Bodenheimer v. City of New Orleans [La.App.], 18 So.2d 224; Jones v. Boh Bros. Construction Co. [La.App.], 79 So.2d 899.
“Plaintiff has invoked the sudden emergency doctrine. In my opinion it has no application to the facts in this case.”
Counsel for appellant does not contest the soundness of the factual conclusions of the trial judge but maintains that his legal conclusions are erroneous and cites numerous authorities. An analysis of the various cases cited by counsel would only unduly lengthen this opinion; suffice it to say that they generally involve inapposite situations *813 ■where a hazardous condition such' as a trap, unmarked ditch or inadequate warnings were involved.
We are fully convinced that the factual conclusions of the trial judge are eminently correct and the Judgment appealed from is therefore affirmed.
Judgment affirmed.